# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| B&L MANAGEMENT GROUP, LLC | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:17-cv-2197 |
| | ) | |
| WILLIAM C. ADAIR, | ) | |
| | ) | |
|     Defendant. | ) | |

## COMPLAINT

COMES NOW B&L Management Group, LLC ("Plaintiff") by and through counsel, and brings the following Complaint against William C. Adair ("Adair" or "Defendant"). As further alleged herein, Adair retained Plaintiff in 2008 to secure a $129 million project with Norfolk Southern Railroad to develop, excavate and construct an intermodal railyard in Rossville, TN on property Adair claimed as his own. As payment for these significant services, Adair promised that he would pay Plaintiff approximately 15% of gross sales of approximately 746 acres of *his own* property located in Fayette County, Tennessee and Marshall County, Mississippi (the "Subject Property"). Plaintiff performed its part of the bargain and the Norfolk Southern Intermodal Facility was constructed to great fanfare (and to great profit by Adair).

Since the time of execution of the contract between Plaintiff and Adair, several parcels of the Subject Property have sold, but Adair has not made the contractual payments to Plaintiff, despite receiving demand. Plaintiff has since learned that Adair

did not even own the property where the Norfolk Southern Intermodal Facility was built and that Adair may not have been the title owner to the Subject Property referenced in the contract.

Plaintiff therefore seeks a judgment from the Court that the subject contract, reduced to writing by Adair and signed by the parties in 2011, is enforceable against Adair and his assignees and heirs, and that Adair is in breach. Plaintiff further seeks an accounting of all parcels comprising the Subject Property, any transfers made by Adair, any monies or other consideration received by Adair, and compensatory damages for breach of contract. Because Plaintiff believes that Adair's representations, both oral and written are fraudulent, Plaintiff also – and in the alternative – seeks compensatory and punitive damages for fraud.

## **PARTIES, JURISDICTION AND VENUE**

1. Plaintiff B&L Management Group, LLC is a Tennessee Limited Liability Company, with a principal office in Fayette County, Tennessee at 570 Canadaville Loop Eads, TN 38028-3768.

2. Defendant William C. Adair is a resident of Mississippi and may be served with process at 7775 Highway 310 W Como, MS 38619-7293.

3. This action arises pursuant to contract, a copy of which is attached hereto as *Exhibit A* (hereinafter referred to as the "Contract").

4. This Court has diversity jurisdiction over this action and William C. Adair pursuant to 28 U.S.C. 1332(a) and (c) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is proper in the United States District Court for the Western District

of Tennessee pursuant to 28 USC § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in the Western District of Tennessee.

6. Pursuant to 22 U.S.C. 2201 and FED. R. CIV. P. Rule 57, this Court has the power to declare the rights, status, and other legal relations of these parties.

7. This Court has personal jurisdiction over Adair because the subject contract was prepared and executed by all parties in the state of Tennessee and governs the sale of real property in Tennessee. Moreover, all acts alleged herein occurred in the state of Tennessee.

## **FACTS**

8. Plaintiff is a Tennessee LLC in the business of consulting and developing on major regional infrastructure projects.

9. Defendant William Adair is a well-known regional businessman who formed Direct Insurance Company in 1991.

10. Adair frequently touted his business bona fides and claimed to Plaintiff to have owned large tracts of valuable commercial and residential real property in Tennessee and Mississippi.

11. In early 2008, Adair told Plaintiff he owned approximately 3000 acres of residential and commercially-zoned realty in Fayette and Marshall Counties.

12. Plaintiff offered its assistance to develop portions of this acreage.

13. Plaintiff thereafter developed the idea of recruiting Norfolk Southern Railroad to a portion of the property for the construction of a new intermodal railyard facility that would serve West Tennessee and North Mississippi.

14. In exchange for developing this business and consulting on the project, which resulted in a $129 million development on the site, Adair promised that he would give Plaintiff an interest in approximately 750 acres of the remaining industrial park (the "Subject Property").

15. Specifically, Adair promised he would pay Plaintiff fifteen percent (15%) of all payments received for sales he made of the Subject Property.

16. He further promised he would *mark up* the cost of the properties to generate the funds to pay Plaintiff' their fifteen percent.

17. He further promised that he would pay Plaintiff fifteen percent (15%) of the profits he received for reselling concrete to developers of the Subject Property.

18. These agreements were reduced to writing in 2011 and signed by all parties. *See "Contract", Exhibit A hereto.*

19. The Contract was prepared and presented by Adair, who told Plaintiff his lawyer had drafted it.

20. The Contract states that it is an agreement between B&L Management Group LLC and William C. Adair *dba* WCA Development Company LLC.

21. WCA Development Company LLC is not now and has never been registered to do business in Tennessee or Mississippi.

22. Upon information and belief, WCA Development Company LLC has never conducted business pursuant to Tennessee or Mississippi statute.

4

23.     Since the execution of the Contract, two entities, Tire & Battery Corp. ("TBC") & MMC Materials, Inc., both non-parties to this action, announced they had purchased portions of the Subject Property.

24.     Adair did not notify Plaintiff and did not pay Plaintiff its contractual fifteen percent (15%), despite receiving demand for same.

25.     Furthermore, upon receiving demand, Adair has expressly threatened to file bankruptcy to avoid his obligations to Plaintiff.

26.     More recently, Plaintiff has learned Adair may not have individually owned <u>any of the property</u> described herein at all and that the express representations made in the Contract were intentionally fraudulent.

27.     Plaintiff seek relief from this Court as a result of this breach of contract and fraudulent conduct.

## **DECLARATORY JUDGMENT**

28.     Plaintiff hereby incorporates and re-alleges the allegations contained in the preceding numbered paragraphs.

29.     Plaintiff seeks a declaratory judgment that Adair is a party to the Contract in his individual/personal capacity, despite having referred to himself as "President" of an LLC in the signature block.

30.     Plaintiff seeks a declaratory judgment that Adair represented to be the title owner of the Subject Property in the Contract.

31.     Plaintiff seeks a declaratory judgment that the Contract is a valid, binding agreement that is enforceable against Adair, his heirs and assignees, under Tennessee law.

32. Plaintiff seeks a declaratory judgment that Adair has expressly repudiated the Contract and his prospective obligations related to future sales and that Plaintiff has been presently damaged as a result thereof.

**BREACH OF CONTRACT/ANTICIPATORY REPUDIATION**

33. Plaintiff hereby incorporates and re-alleges the allegations contained in the preceding numbered paragraphs.

34. Plaintiff contracted with Adair to provide substantial development, planning and consultation services in exchange for a portion of profits of prospective realty sales.

35. Plaintiff provided extensive and valuable services in reliance upon the representations and covenants made by Adair directly and in the Contract.

36. Adair has breached the Contract by not providing Plaintiff the payments described therein.

37. Adair has expressly told Plaintiff that he has no intention of paying Plaintiff the amounts provided in the Contract on future sales of the Subject Property.

38. As a result of Adair's breach of contract, Plaintiff has been and continues to be damaged in an amount in excess of fifteen percent of the fair market value of the Subject Property.

**ACCOUNTING**

39. Plaintiff hereby incorporates and re-alleges the allegations contained in the preceding numbered paragraphs.

40. Plaintiff seeks an accounting of all parcels comprising the Subject Property marketed and sold by Adair, and all profits received by Adair, either directly or through any entities which are subject to his control.

41. Plaintiff seeks an accounting of all profits received by Adair from the resale of concrete for use on the Subject Property.

## **FRAUD – SPECIFIC FACTS**

42. Plaintiff hereby incorporates and re-alleges the allegations contained in the preceding numbered paragraphs.

43. Between late 2008 and 2011, Adair routinely advised Plaintiff that he was the title owner of all of the Subject Property and that he therefore had control of the sales, sales price, and distribution of profits.

44. In 2011, Adair presented Plaintiff with a Contract which expressly memorializes these representations.

45. Adair signed this writing on August 1, 2011.

46. Adair knew at the time of telling, writing and signing the Contract, that he was not the title owner of the Subject Property and had no control over the sales, sales price or distribution of profits therefrom.

47. Adair intended that Plaintiff rely on these fraudulent misrepresentations.

48. Plaintiff did reasonably rely on these representations and performed significant and ostensibly expensive services for Adair for which it has never been compensated; Plaintiff relied to its detriment.

49. As a result of Adair's fraud, Plaintiff has been and continues to be damaged in an amount to be proven at trial.

## DAMAGES AND PUNITIVE DAMAGES

50. As a result of the acts and omissions as set forth above, Adair is liable to Plaintiff for breach of contract in an amount equal to fifteen percent (15%) of all profits received for Adair's sale of any portions of the Subject Property. In light of Adair's repudiation of the Contract and express statements that he will not pay Plaintiff for future sales, Plaintiff are entitled to damages in an amount equal to fifteen percent (15%) of the fair market value of the unsold remainder of the Subject Property.

51. In addition, or in the alternative, if this Court determines that Adair's representations were fraudulent, Plaintiff is entitled to damages, including punitive damages, resulting from same.

52. Plaintiff expressly alleges that Adair's conduct was fraudulent, intentional, reckless or malicious.

WHEREFORE, premises considered, Plaintiff prays for the following:

1. That this Court declare that Defendant is a party to the Contract in his individual/personal capacity, that Defendant represented to be the title owner of the Subject Property in the Contract, that the Contract is a valid, binding agreement that is enforceable against Defendant, his heirs and assignees, and that Defendant has expressly repudiated the Contract and his prospective obligations related to future sales;

2. That this Court order Defendant to provide an accounting of all sales and marketing relating to the Subject Property;

3. That this Court award Plaintiff compensatory damages for Defendant's breach of contract;

4. That this Court award Plaintiff punitive damages for Defendant's fraudulent, intentional, reckless or malicious conduct; and

5. That this Court award Plaintiff any and all other relief which this Court may deem just and appropriate.

Respectfully submitted,

/s/ Darrell N. Phillips
DARRELL N. PHILLIPS, ESQ. (30299)
2095 EXETER RD., SUITE 80
GERMANTOWN, TN 38138
LEGAL@MEMPHISCOUNSEL.COM
(901) 609-3476
*Attorney for Plaintiff*